IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 10 CR 927 |
| v. | ) | |
| | ) | |
| ERIK SHAMSUD-DIN, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Defendant Erik Shamsud-Din moves *in limine* to exclude the government's expert witness, Dr. Sharon W. Cooper, M.D., pursuant to Rules 401, 402, 403, and 702 of the Federal Rules of Evidence, and the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). Defendant alternatively requests that the Court conduct a *Daubert* hearing. For the reasons explained below, the Court denies Defendant's motion *in limine* to exclude the expert testimony of Dr. Cooper, and denies Defendant's alterative motion to conduct a *Daubert* hearing.

**BACKGROUND**

**I.    Underlying Allegations and Charges**

On June 7, 2011, a federal grand jury returned a Superseding Indictment against Defendant, charging him with two counts of sex trafficking, in violation of 18 U.S.C. §§ 1591(a) and 2423(a). Count One charges Defendant with sex trafficking of a minor, in violation of 18 U.S.C. § 1591(a), from December 2006 through at least January 27, 2007. To establish a

1

violation of Section 1591(a), the government must prove that Defendant recruited, enticed, harbored, transported, provided, obtained, or maintained Victim A, knowing or recklessly disregarding the fact that Victim A was a minor under the age of 18 and would be caused to engage in a commercial sex act. *See* 18 U.S.C. § 1951(a); *United States v. Chappell*, --- F.3d ---, 2012 WL 163787, at *1-2 (8th Cir. Jan. 20, 2012). The offense must also affect interstate commerce. *See* 18 U.S.C. § 1591(a); *United States v. Myers*, 430 F. App'x 812, 815-16 (11th Cir. 2011).

Count Two charges Defendant with transporting a minor from Texas to Illinois on or about January 23, 2007, to engage in prostitution, in violation of 18 U.S.C. § 2423(a). To establish a Section 2423(a) violation, the government must prove that Defendant transported Victim A, who was less than 18 years old, in interstate commerce with the intent that Victim A engage in prostitution. *See United States v. Vasquez*, 611 F.3d 325, 328 (7th Cir. 2010); *United States v. Cox*, 577 F.3d 833, 834 (7th Cir. 2009). The government need not prove that Defendant knew or believed that Victim A was under the age of 18. *See Cox*, 577 F.3d at 836-37.

The government represents that its evidence will establish that Defendant used the Internet to advertise the prostitution services of two females, a juvenile (Victim A) and an adult (Victim B), and taught Victim B how to use the Internet to advertise herself. Defendant then traveled with these females across the country for the women to meet with individuals who responded to the Internet advertisements for the purpose of having sex. Defendant was romantically involved with Victim B. Both females gave Defendant all of their earnings from the prostitution. Defendant has pleaded not guilty to both Counts.

**II.     Dr. Sharon W. Cooper, M.D.**

At issue in the present motion is the admissibility of the anticipated expert testimony of the government's expert, Dr. Sharon W. Cooper, M.D.  Dr. Cooper, a retired Army colonel, is a licensed pediatrician who specializes in developmental, behavioral and forensic pediatrics, particularly as it relates to child sexual exploitation.[1]  (*See, e.g.*, Gov't Sur-Rep., Ex. A at 3.)  Dr. Cooper has served as an expert witness in dozens of cases, including numerous in federal court.  (Def.'s Mot., Ex. C.)

As described in her seventy page curriculum vitae, Dr. Cooper has practiced medicine for more than thirty years in various capacities, including approximately seventeen years as an Army physician, and more than a decade as faculty member of the Department of Pediatrics at the University of North Carolina, Chapel Hill.  Dr. Cooper additionally has associated with a military medical school – University of Health Services – for over 20 years, and maintains an association with a Duke University-affiliated child abuse clinic, among other associations.  (*Id.*)

Dr. Cooper has worked in the area of child exploitation since 1996.  This area currently is her primary focus.  She operates a professional corporation called Developmental and Forensic Pediatrics, and consults for the National Center for Missing and Exploited Children, where she is a board member.  Dr. Cooper has testified before the U.S. Congress, Russian Parliament, and Italian Senate on the issue of child sexual exploitation, and, as described more fully below, has

---

[1] Dr. Cooper explained in a recent case:  "A developmental and behavioral pediatrician is a general pediatrician who has had additional training in the areas of child development and behavior.  We usually see children who are graduates from intensive care nurseries, children who have attention deficit problems and difficulties; but, we also see children that have a lot of behavioral problems, adolescents who have anxiety, depression, post-traumatic stress disorder and other mental health diagnoses."  (R. 117, Gov't Sur-Rep., Ex. A at 2.)

interacted with over 200 victims of sex trafficking, worked with hundreds of law enforcement officers on the subject, and been heavily involved in reviewing literature and studies relating to all areas of sexual trafficking.

### III. Government's Rule 16 Notice

On October 14, 2011, pursuant to Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure, the government provided notice to Defendant of its intent to call Dr. Cooper as an expert witness at trial. (R. 92, Ex. A.) The government states that it "expects that Dr. Cooper will be qualified to testify as an expert on common dynamics that occur in the operation of sex trafficking," including the following topics:

- Topic No. 1: "The typical means sex traffickers use to target, recruit, manipulate, and maintain adult and minor victims." (*Id.*) According to the government: "Dr. Cooper will testify about how there are different types of sex traffickers that use different methods to recruit and maintain the women who work for them. Particularly relevant to this case will be Dr. Cooper's testimony about how 'finesse pimps' use romance and the notion of a better life to recruit victims." (Gov't Resp. at 2.)

- Topic No. 2: "The contributing factors that can make adult and minor victims more susceptible to influence by sex traffickers." (R. 92, Ex. A.) The government explains that: "Dr. Cooper will testify about 'compliant victims' who continue to work for the sex trafficker, even without the threat of physical force, because they have nowhere else to go. Dr. Cooper will testify that this is particularly common with respect to children who have run away from home. She will also testify that juveniles have a more immature brain that makes them easier to convince to stay with the sex trafficker." (Gov't Resp. at 2.)

- Topic No. 3: "The common means that sex traffickers use to maintain control over victims' actions and to prevent victims from leaving the relationship." (R. 92, Ex. A.) The government proffers that: "Dr. Cooper will testify about the methods that a 'finesse pimp' uses to maintain control over his victims. These methods include romance, making the victim feel special, and providing a better life than the victim could maintain on her own. In this area, Dr. Cooper will also testify about the mental health issues that can cause a victim to continue to relate to her sex trafficker, even years after having escaped the world of sex trafficking. Dr. Cooper will also testify about how common it is for victims to feel guilt about

4

getting the person who trafficked them into trouble." (Gov't Resp. at 2.)

- Topic No. 4: "Other information about the subculture of sex trafficking, including the meaning of certain terms such as 'bottom bitch,' 'out of pocket,' 'daddy,' and the 'track.'" (R. 92, Ex. A.) The government states that: "Dr. Cooper will define common terms used in the sex trafficking world. She will also testify as to the common dynamics between sex traffickers and their victims and between the multiple victims that may be working for a sex trafficker at a given time. For example, Dr. Cooper will testify about how a sex trafficker and his victims typically operate like a family, with the sex trafficker acting as 'daddy.' She will also explain how there is typically a 'bottom bitch,' which is the victim that is closest to the sex trafficker and highest in the pecking order." (Gov't Resp. at 3.)

With its notice, the government additionally provided Defendant with (1) Dr. Cooper's curriculum vitae; (2) information about a textbook that Dr. Cooper co-edited and co-authored; (3) a list of legal cases in which Dr. Copper has participated from 2006 to 2011; (4) transcripts from Dr. Cooper's testimony in three previous cases; and (5) court orders from district courts holding that Dr. Cooper is qualified to testify as an expert on similar topics.[2] (*Id*.)

## IV. Defendant's Motion

On October 26, 2011, Defendant filed the present motion *in limine* seeking to exclude the expert testimony of Dr. Cooper. (R. 92.) Defendant argues that the Court should bar the anticipated expert testimony of Dr. Cooper because it is irrelevant and otherwise fails to satisfy the requirements of Rule 702 and *Daubert*.

---

[2]On pages 15-16 of the present motion *in limine*, Defendant argues that the government's Rule 16 disclosure was inadequate. *See* Fed. R. Crim. P. 16(a)(1)(E). This argument lacks merit. The government provided Defendant with a letter listing the topics about which Dr. Cooper will testify, and additionally included Dr. Cooper's prior testimony on those topics, together with numerous additional records relating to her expert qualifications. Under these circumstances, the government has satisfied its obligations under Rule 16. *See, e.g.*, *United States v. Yoon*, 128 F.3d 515, 526-27 (7th Cir. 1997).

5

**LEGAL STANDARD**

"The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's opinion in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). Under Rule 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702; *see also Ortiz v. City of Chicago*, 656 F.3d 523, 526 (7th Cir. 2011).

"The district court functions as a gatekeeper with respect to testimony proffered under Rule 702 to ensure that the testimony is sufficiently reliable to qualify for admission." *Mihailovich v. Laatsch*, 359 F.3d 892, 918 (7th Cir. 2004) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)). District courts must employ a three-part analysis before admitting expert testimony: (1) the expert must be qualified as an expert by knowledge, skill, experience, training, or education; (2) the expert's reasoning and methodology underlying his testimony must be scientifically reliable; and (3) the expert's testimony must assist the trier of fact in understanding the evidence or to determine a factual issue. *See Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010). "The goal of *Daubert* is to assure that experts employ the same 'intellectual rigor' in their courtroom testimony as would be employed by an expert in the relevant field." *Jenkins v. Bartlett*, 487 F.3d 482, 489

(7th Cir. 2007) (quoting *Kumho Tire Co.*, 526 U.S. at 152). The "'measure of intellectual rigor will vary by the field of expertise and the way of demonstrating expertise will also vary.'" *United States v. Conn*, 297 F.3d 548, 556 (7th Cir. 2002) (quoting *Tyus v. Urban Search Mgmt.*, 102 F.3d 256, 263 (7th Cir. 1996)).

## ANALYSIS

In this case, Defendant challenges the admissibility of Dr. Cooper's anticipated expert testimony. Consistent with the "three-part analysis" advanced by the Seventh Circuit, the Court considers Dr. Cooper's qualifications, the reliability of her reasoning and methodology, and the relevance of her anticipated testimony. *See Myers*, 629 F.3d at 644.

### I. Qualifications

The Court begins with Defendant's argument that "Dr. Cooper's testimony should be barred because she lacks sufficient expertise to testify as an expert on the topics proposed by the government." (Def.'s Mot. at 6.) Defendant makes two arguments in this regard. First, Defendant argues that Dr. Cooper is not qualified to testify about "sex trafficking of 'adult victims.'" (*Id.*) Defendant explains that Dr. Cooper is "a pediatrician whose focus has been child sexual abuse and exploitation," and [n]othing in Dr. Cooper's background indicates that she has studied adult victims of sex trafficking." (*Id.* at 7 (citing *id.*, Ex. B).) The Court disagrees.

As an initial matter, Defendant's objection may be moot because, as the government represents, Dr. Cooper's testimony will focus on "child victims of sex traffickers, given that the charged crimes involve a child victim." (Gov't Resp. at 6.) Nonetheless, to the extent she will testify about adult victims, the government represents that Dr. Cooper will, consistent with her

7

credentials, discuss that "her research and experience involves both child and adult victims of sex trafficking." (*Id.*); *see also United States v. Langan*, 263 F.3d 613, 623 (6th Cir. 2001) (holding that "[t]he fact that [the expert] has spent more time and effort studying children should not have disqualified him from testifying about the misidentification phenomenon in adults," particularly because the expert "had published articles, edited books, and given lectures dealing specifically with misidentification in adult witnesses").

Second, Defendant argues that Dr. Cooper is not qualified to testify about "minor victims" of sex traffickers, the means used by sex traffickers to 'control' victims and 'other information about the subculture of sex trafficking.'" (Def.'s Mot. at 7.) The Court again disagrees. Even an abbreviated review of Dr. Cooper's curriculum vitae makes plain that she has the requisite "knowledge, skill, experience, training, or education" to qualify her as an expert on the topics noticed by the government. *See* Fed. R. Evid. 702.

Dr. Cooper has developed an expertise in sex trafficking through her extensive experience, training, and research as a forensic pediatrician. She has practiced pediatrics since 1976 – as an Army doctor for 17 years, and most recently as a staff physician in the Department of Pediatrics at the University of North Carolina, Chapel Hill, among other roles. Dr. Cooper has frequently presented at national and international conferences on child sexual exploitation and human trafficking, and has testified on those topics before the U.S. Congress and at least two foreign legislatures. Additionally, Dr. Cooper has authored book chapters and training materials on sexual exploitation, and is the lead editor of a recognized treatise on child sexual exploitation.

Since 1997, Dr. Cooper has served as an instructor at the National Center for Missing and Exploited Children, where she teaches a course entitled "Prostitution of Children and Youth." In

8

connection with her work, Dr. Cooper serves on numerous boards and provides training to investigators, prosecutors, judges, and others, on the topic of sexual exploitation of children and "pimp-prostitute relationship dynamics." (Gov't Resp. at 4.) Additionally, throughout her career, Dr. Cooper has treated and interviewed more than 200 victims of sexual exploitation. She has complemented all of these activities with participation in criminal cases, and study and teaching of the subject through documentary films, books, and otherwise familiarizing herself with the subculture of "pimping."

In challenging Dr. Cooper's expert qualifications, Defendant argues that "[i]t does not appear that she ever has studied a statistically significant sample of sex trafficking victims (or sex traffickers) in any controlled way," and that "all or most of her proposed testimony involves matters of human behavior and mental health that are outside the field of pediatric medicine." (Def.'s Mot. at 8-9.) What Defendant overlooks, however, is that "while extensive academic and practical expertise in an area is certainly sufficient to qualify a potential witness as an expert, Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is based on experience." *Trs. of Chicago Painters and Decorators Pension, Health and Welfare, and Deferred Sav. Plan Trust Funds v. Royal Int'l Drywall and Decorating, Inc.*, 493 F.3d 782, 787-88 (7th Cir. 2007) (internal citations and quotation marks omitted); *see also Compania Administradora de Recuperacion de Activos Administradora de Fondos de Inversion Sociedad Anonima v. Titan Int'l, Inc.*, 533 F.3d 555, 561 (7th Cir. 2008). In certain fields, like the study of sex trafficking, experience may well be the "predominant, if not the sole basis for a great deal of reliable expert testimony." *Conn*, 297 F.3d at 556 ("genuine expertise may be based on experience or training") (internal citations and quotation marks omitted).

Accordingly, in light of the full range of Dr. Cooper's experience, training, and background, the Court denies Defendant's motion *in limine* on the basis that Dr. Cooper is not qualified to offer expert opinion on the topics noticed by the government. In denying the motion, the Court observes that numerous other federal district courts have found Dr. Cooper to be qualified to offer expert testimony on similar topics. *See, e.g.*, *United States v. King*, 09 CR 703 (D. Hawaii); *United States v. Davis*, (D. Conn.); *United States v. Williams*, 05 CR 443, 2007 WL 3118306, at *3 (M.D. Pa. Oct. 19, 2007) (qualified as expert on "commercial sexual exploitation of women"). *Cf. United States v. Sawyer*, 10 CR 744 (N.D. Ill.) (expected to offer expert testimony without objection).

## II.     Reliability

The next question is "whether the proffered expert testimony is 'based upon sufficient facts or data' and is 'the product of reliable principles and methods.'" *Kunz v. DeFelice*, 538 F.3d 667, 676 (7th Cir. 2008) (quoting Fed. R. Evid. 702). Defendant contends that Dr. Cooper's work cannot meet the mandates of *Daubert* because she "offers no theory or methodology, much less a theory or methodology that can be tested or peer reviewed by anyone else." (Def.'s Mot. at 13.) Defendant believes that Dr. Cooper's interactions with victims were varied – "including as a treating physician, an expert witness, as the editor of a text book to which former child prostitutes contributed writings, at conferences, etc." – and that her interactions cannot constitute "a statistically significant sample of those who have been sex trafficked." (*Id.* at 11 (citing *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 319 (7th Cir. 1996).)

In assessing reliability, the Court's focus is on the expert's "principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 594-95; *see also Winters v.*

10

*Fru-Con Inc.*, 498 F.3d 734, 742 (7th Cir. 2007). The Supreme Court in *Daubert* set forth a number of considerations in this regard, including testing, peer review, error rates, and acceptability in the relevant scientific community. *See Daubert*, 509 U.S. at 593-94. "The goal of *Daubert* is to assure that experts employ the same 'intellectual rigor' in their courtroom testimony as would be employed by an expert in the relevant field." *Jenkins v. Bartlett*, 487 F.3d 482, 489 (7th Cir. 2007) (quoting *Kumho Tire Co.*, 526 U.S. at 152).

In the present case, Defendant overlooks the nature of Dr. Cooper's academic and professional discipline and how this relates to her expertise. Dr. Cooper's expertise comes from her experience, training and interactions with victims, law enforcement, and others with specialized knowledge of the sex trafficking trade. She does not rely primarily on the hard sciences in support of her expert opinion, nor must she to avoid disqualification under *Daubert*. *See, e.g.*, *United States v. Joseph*, 542 F.3d 13, 21 (2d Cir. 2008) (holding that "[s]ocial science research, theories and opinions cannot have the exactness of hard science methodologies and expert testimony need not be based on statistical analysis in order to be probative") (internal citations and quotation marks omitted); *Laatsch*, 359 F.3d at 919 ("[T]he *Daubert* framework is a flexible one that must be adapted to the particular circumstances of the case and the type of testimony being proffered[.]"); *Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 870 (7th Cir. 2001) ("Of course, *Daubert* is a flexible test and no single factor, even testing, is de."); *Lawson v. Trowbridge*, 153 F.3d 368, 375-76 (7th Cir. 1998) (finding no abuse of discretion in admitting expert testimony of police officers that "was not scientific – either in a hard or soft (social science) way – and it was entirely descriptive rather than based on empirical study of any sort").

Dr. Cooper developed her expertise on sex trafficking through her own medical practice and personal interviews with victims, among others, regarding their experiences with the prostitution and sex trafficking trade. She has participated in and reviewed case analyses and reports from national and international law enforcement bodies charged with investigating child sex trafficking and its perpetrators. She has worked with others in the field, including Dr. Richard Estes from the University of Pennsylvania, with whom she co-edited a two volume treatise entitled "Child Sexual Exploitation."

Medical professionals, like Dr. Cooper, working in the social sciences frequently base their opinions on interviews and interactions with victims and others, and Defendant cites no authority that would require Dr. Cooper to have conducted "statistically significant" studies as a prerequisite to offer expert testimony. *See United States v. Anderson*, 560 F.3d 275, 281 (5th Cir. 2009) (finding no abuse of discretion where district court qualified witness as an expert on "typical characteristics of adolescent prostitutes and[] behavior of pimps" based on witness' experience assisting victims of sex crimes); *Trowbridge*, 153 F.3d at 375 (stating that the *Daubert* test of reliability is "more helpful" in evaluating the reliability of empirical and scientific studies, rather than the reliability of descriptive testimony in the field of social science); *see also Kumho Tire Co.*, 526 U.S. at 141 (noting that *Daubert* calls for a "flexible" inquiry).

Accordingly, based on Dr. Cooper's background, experience, and qualifications, including her interactions with numerous victims of sex trafficking and others who have personal knowledge of the trade, the Court rejects Defendant's arguments as to the reliability of, including the sufficiency of the factual basis for, Dr. Cooper's anticipated expert testimony.

**III.     Relevance**

Finally, Defendant challenges the relevance of Dr. Cooper's anticipated expert testimony. *See* Fed. R. Evid. 401 (stating that evidence is relevant is "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action"). Because the government does not offer Dr. Cooper as a fact witness, the operative inquiry is whether her testimony would "assist the trier of fact" to reach a conclusion on any factual issue involved in the case. *See United States v. Caputo*, 374 F. Supp. 2d 632, 641 (N.D. Ill. 2005) (citing Fed. R. Evid. 702; *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000)).

Although Dr. Cooper has not interviewed the alleged victims in this case, her testimony will be relevant to the jury's understanding of the evidence. *See, e.g.*, *United States v. Kelly*, No. 07 CR 374, 2008 WL 5068820, at *9 (E.D.N.Y. July 10, 2008) ("The courts have deemed prostitution rings and the relationships between prostitutes and pimps to be subjects in which expert testimony may be relevant.") (collecting cases). As an initial matter, "by and large, the relationship between prostitutes and pimps is not the subject of common knowledge." *United States v. Taylor*, 239 F.3d 994, 998 (9th Cir. 2001). Defendant concedes as much. (Def.'s Rep. at 7 ("It is true that most jurors do not understand what typically occurs between pimps and prostitutes").)

Through her testimony on the dynamics of the relationship between primps and prostitutes – including the means used to recruit and control victims, the subculture of sex trafficking generally and its attendant terminology – Dr. Cooper will assist the jury's understanding of the very nature and circumstances of this case. *See, e.g.*, *Williams*, 2007 WL

13

3118306, at *3 (citing *Taylor*, 239 F.3d at 998). Her testimony will additionally assist the jury in evaluating the credibility of witnesses, and indeed will assist the jury in evaluating Defendant's anticipated defense that the victims prostituted themselves voluntarily. *See, e.g.*, *United States v. Anderson*, 851 F.2d 384, 393 (D.C. Cir. 1988). Furthermore, Dr. Cooper's testimony will help the jury understand the relationship between Defendant and the victims who will testify during trial. It will give the jury the context to evaluate the testimony. All of this is borne out in Dr. Cooper's recent testimony in *United States v. Datqunn Sawyer*, 10 CR 744 (N.D. Ill. Nov. 8, 2011), where she offered relevant and helpful testimony in a similar sex trafficking prosecution. (*See* Gov't Sur-Rep., Ex. A.)

Contrary to Defendant's argument, Dr. Cooper's anticipated expert testimony will not risk confusing the jury, or otherwise risk exposing Defendant to undue prejudice within the meaning of Rule 403. *See* Fed. R. Evid. 403; *Cruz v. Stafford*, 579 F.3d 840, 845 (7th Cir. 2009) (observing that a district court has "broad discretion" under Rule 403). In addition, the Court will properly instruct the jury on evaluating expert opinions. Even though Dr. Cooper's testimony may be graphic, nothing in the record suggests that Dr. Cooper's testimony will transform the jury, as Defendant fears, into a "lynch mob for a larger social ailment." (Def. Rep. at 6.) *Cf. United States v. Hayes*, 434 F. App'x 94 (3d Cir. 2011) (unpublished) (holding that district court did not abuse its discretion in allowing the expert testimony of Dr. Cooper on the topic of sexual exploitation of children, where defendant argued undue prejudice).

**IV.** *Daubert* **Hearing**

Defendant alternatively requests a *Daubert* hearing to develop evidence relating to Dr. Cooper's "qualifications, methodology, data and other matters." (Def.'s Mot. at 15.) Whether to

conduct such a hearing is a matter of discretion, and as the Seventh Circuit has held, a district court need not conduct a *Daubert* hearing where the court has "a sufficient basis for [the] decision without holding a hearing." *Kirstein v. Parks Corp.*, 159 F.3d 1065, 1067 (7th Cir. 1998). Here, the record is extremely developed, and includes hundreds of pages of expert testimony from Dr. Cooper in similar cases prosecuted in federal court. (*See, e.g.*, Def.'s Mot., Ex. C; Gov't Sur-Rep., Ex. A.) The Court need not take any additional evidence as such evidence is unnecessary. Defendant may develop Dr. Cooper's testimony during cross-examination at trial, but the record as it currently exists provides more than a "sufficient basis" for the Court to evaluate the admissibility of Dr. Cooper's anticipated expert testimony. *Kirstein*, 159 F.3d at 1067. Accordingly, Defendant's request for a *Daubert* hearing is denied.

## CONCLUSION

For the reasons explained above, Defendant's *motion in limine* to exclude the expert testimony of Dr. Cooper is denied, as is Defendant's motion for a *Daubert* hearing.

**Date:** January 31, 2012

                      **ENTERED**

                      */s/ Amy J. St. Eve*
                      **AMY J. ST. EVE**
                      **United States District Court Judge**